UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JULIA DENISE O.,

        Plaintiff,

   -v-                                       1:18-CV-1336

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

LEGAL AID SOCIETY                ROSE PUANANI LANDAU, ESQ.
  OF NORTHEASTERN NY
Attorneys for Plaintiff
40 New Street
Saratoga Springs, NY 12866

SOCIAL SECURITY ADMINISTRATION    DANIEL STICE TARABELLI, ESQ.
  OFFICE OF THE GENERAL COUNSEL    Special Ass't United States Attorney
Attorneys for Defendant
15 Sudbury Street, Suite 625
Boston, MA 02203

DAVID N. HURD
United States District Judge

---

[1] The named defendant in this action is "Nancy Berryhill, in her official capacity as the Acting Commissioner of the Social Security Administration." However, the Senate has since confirmed Andrew Saul to that post. Accordingly, the Clerk of the Court is directed to amend the caption accordingly. *See* FED. R. CIV. P. 25(d) (providing for automatic substitution of public officer's successor in an official-capacity suit).

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Julia O.[2] ("plaintiff" or "claimant") brings this action seeking review of a final decision by defendant Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Defendant has filed a certified copy of the Administrative Record and both parties have briefed the matter.[3] Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. PROCEDURAL HISTORY

On May 13, 2015,[4] plaintiff filed applications for SSI and DIB alleging that her heart condition with quadruple bypass, crushed right foot, non-cancerous kidney tumor, lump in her breast, high blood pressure, high cholesterol, neurological issues, anxiety, and depression rendered her disabled beginning on November 1, 2013. R. at 124-25, 135-36, 213.[5]

On October 29, 2015, the Commissioner denied both applications. R. at 137-40. At plaintiff's request, defendant ordered an Administrative Law Judge ("ALJ") to conduct a *de novo* review of plaintiff's application for benefits. *Id*. at 137-40, 145-46.

On February 13, 2018, ALJ Andrew Soltes, Jr. presided over a hearing on plaintiff's

---

[2] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

[3] General Order 18 provides, *inter alia*, that a claimant's appeal from the Commissioner's final decision denying benefits will be treated as if the parties have included in their briefing cross-motions for judgment on the pleadings under Fed. R. Civ. P. 12(c).

[4] The parties and the ALJ identified this as the relevant date, but the Administrative Record reflects a filing date of July 31, 2015. R. at 187-99. The distinction is immaterial.

[5] Citations to "R." refer to the Administrative Record. Dkt. No. 9.

claim. R. at 60-112. Plaintiff, represented by attorney Rose Landau, appeared in person and testified. *Id*. The ALJ also heard testimony from Vocational Expert ("VE") Thomas Nimberger. *Id*.

On May 1, 2018, the ALJ issued a written decision granting in part and denying in part plaintiff's benefits claim. R. at 16-29. As relevant here, the ALJ rejected plaintiff's claim of disability between November 1, 2013, her alleged onset date, and May 24, 2017, the day before her 55th birthday. *Id*. However, the ALJ also granted plaintiff benefits from that date forward. *See id*.

On September 19, 2018, the ALJ's partially favorable written decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review of the denial of benefits prior to May 24, 2017. R. at 1-4.

## III. LEGAL STANDARDS

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

"First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal." *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984).

"Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada*, 167 F.3d at 773. "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Poupore,* 556 F.3d at 305 (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. *See Williams*, 859 F.2d at 258. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may lead it to a different conclusion than the one reached by the Commissioner. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## B. The Commissioner's Disability Determination

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Section 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant whose impairment or combination of impairments meets or equals one of the Listings is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149.

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The burden of proof with regard to these first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if it is determined that the claimant cannot perform her past relevant work, the burden shifts to the Commissioner for step five. *Id*.

This fifth step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a

claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. *Perez*, 77 F.3d at 46.

The Commissioner typically meets the burden at step five in one of two ways. If a claimant's impairments are primarily or exclusively exertional in nature, defendant may appropriately rely on the Medical–Vocational Guidelines contained in 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012) (summary order).

Commonly known as "the Grid" or "the Grids," the Medical–Vocational Guidelines are a collection of tables that "simplify and expedite the determination of disability" by offering "predeterminations of disability or non-disability for individual cases based on various combinations of residual functional capacity, age, education and work skill." *Davis v. Shalala*, 883 F. Supp. 828, 832 (E.D.N.Y. 1995) (citation omitted)

Notably, the Commissioner may rely on the Guidelines even if a claimant suffers from one or more non-exertional impairments. *See, e.g.*, *Bapp v. Bowen*, 802 F.3d 601, 603 (Cardamone, J.) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines.").

However, if a claimant's non-exertional limitations "significantly diminish" his or her work capacity, the Commissioner "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Chaparro v. Colvin*, 156 F. Supp. 3d 517, 537 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).

## IV. **DISCUSSION**

### A. **The ALJ's Decision**

Applying the five-step disability determination, the ALJ found that: (1) plaintiff had not engaged in substantial gainful activity since November 1, 2013, the alleged onset date; (2) her myocardial infarction, cardiac arrest and brain anoxia, quadruple bypass surgery, neurological deficiencies, adjustment disorder, depressive disorder, and lower extremity post-trauma were severe impairments within the meaning of the Regulations; and that (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 18-20.

At step four, the ALJ determined that plaintiff's impairments caused exertional and non-exertional limitations. R. at 20-26. However, the ALJ found that plaintiff retained the RFC to

> perform light work, . . . except that she can [only] perform occasional stooping, kneeling, crouching, and crawling; occasional climbing of ramps and stairs; [and] no climbing of ladders, ropes, or scaffolds. She cannot work at unprotected heights or use a motor vehicle for work purposes. She is limited to a low stress work environment defined as simple, routine, repetitive tasks. She can make basic work related decisions, adapt to rare changes in the workplace setting, [and] have occasional interaction with the public, but only superficial interaction; [She can have] occasional interaction with co-workers and supervisors; and she may be 10% off task of the 8 hour workday.

*Id*. at 20.

According to the ALJ, this combination of limitations precluded plaintiff from performing her past relevant work as a "dump truck driver" and as an "asphalt paver." R. at 26. The ALJ found that this RFC, considered together with plaintiff's age and education, still allowed her to perform the job duties of a "packager," a "wire worker," and a "bench

assembler." *Id*. at 28. Because these jobs fit in with plaintiff's assessed limitations and were present in sufficient numbers in the national economy, the ALJ concluded plaintiff was not disabled at any time prior to May 24, 2017, the day before her 55th birthday.[6] *Id*.

However, as the ALJ explained in his written decision, plaintiff's birthday brought about an important change in classification under the Regulations. R. at 27-28. Because plaintiff had become "an individual of advanced age," the Medical–Vocational Guidelines mandated a finding of disability from that date forward. *Id*. at 28. Accordingly, the ALJ granted in part and denied in part plaintiff's application for benefits. *Id*.

## B. Plaintiff's Appeal

On appeal, plaintiff concedes that her disability did not begin on November 1, 2013, the onset date she alleged in her filings with the Administration. Pl.'s Mem., Dkt. No. 10, 5.[7] Even so, plaintiff contends the ALJ should have granted her disability benefits running from March 16, 2015, the date on which she suffered a cardiac arrest, rather than two years later on May 24, 2017, the date on which she became "an individual of advanced age" for purposes of the Regulations. *Id*.; *see also* R. at 21, 302.

As plaintiff explains, this roughly two-year gap between the date of her heart attack in 2015 and the ALJ's grant of benefits in 2017 resulted from a failure to appreciate the significance of the brain anoxia she suffered in the twenty minutes it took emergency medical services to get her heart beating properly again. *See* Pl.'s Mem. at 5-6; *see also* R. at 21, 302. According to plaintiff, this anoxic brain injury—which occurs when a person's brain is

---

[6] Interestingly enough, the Administration follows the practice of English common law, which finds that a person attains an age on the day before their birthday. *See* Def.'s Mem., Dkt. No. 14 at 3 n.3.

[7] Pagination corresponds with CM/ECF.

deprived of oxygen—exacerbated the severity of her pre-existing mental impairments to the point where the mental demands of any kind of sustained work became impossible. Pl.'s Mem. at 5-6.

In plaintiff's view, the ALJ's failure to connect the trauma from this March 16, 2015 incident to the onset of the more severe mental limitations reflected in her medical record led him to: (1) miscalculate the severity of her mental impairments at step three; (2) improperly weigh certain opinions given by her treating sources; and (3) fail to incorporate an accurate set of mental limitations into the RFC finding. Pl.'s Mem. at 22-27.

### 1. **Mental Impairments at Step Three**

Plaintiff's briefing seems to indicate the ALJ should have found her presumptively disabled at step three. *See* Pl.'s Mem. at 23-26. Plaintiff argues the ALJ incorrectly concluded that she suffered from only "moderate" limitations in each of four areas of mental functioning. *Id*. According to plaintiff, her limitations in three functional areas are of sufficient severity to meet or equal Listing 12.04. *See id*.

At step three, the ALJ considered whether plaintiff's severe impairments met or equaled any of the Listings. R. at 19. In particular, the ALJ considered whether plaintiff's physical impairments matched up with Listings 1.02, 4.02, or 4.04. *Id*. The ALJ also considered whether plaintiff's mental impairments met the requirements of Listing 12.04. *Id*.

Listing 12.04 requires a claimant to provide medical documentation establishing a qualifying diagnosis of either depressive disorder or bipolar disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. In addition to this threshold showing, the claimant must demonstrate that she satisfies the "paragraph B" criteria, which require a claimant to show either an "extreme" limitation of one, or a "marked" limitation of two, of the following four

areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B).[8]

The ALJ concluded that plaintiff's mental impairments did not satisfy the paragraph B criteria because plaintiff suffered only "moderate" limitations in each of the four areas of mental functioning. R. at 19-20. According to plaintiff, the ALJ erred in reaching these conclusions because the evidence *conclusively* demonstrates that she actually suffers from "marked" limitations in (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; and/or (3) adapting or managing herself. Pl.'s Mem. at 23-26; *id*. at 22 ("[T]he record mandates a finding of at least marked limitations in all of these categories beginning on March 16, 2015.").

"The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability." *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citations omitted). However, "[i]n order for a condition to be considered disabling *per se* under step three, it must satisfy each element set out in the definition of a listed impairment." *Bolden v. Comm'r of Soc. Sec.*, 556 F. Supp. 2d 152, 162 (E.D.N.Y. 2007). "If a claimant's impairment manifests only some of those criteria, no matter how severely, such impairment does not qualify." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (Mordue, J.) (citation and internal quotation marks omitted).

Measured against this body of case law, plaintiff's argument comes up short. The

---

[8] Alternatively, a claimant may sidestep the paragraph B criteria by demonstrating instead that her depressive disorder or bipolar disorder is "serious and persistent" in accordance with paragraph C, which sets forth certain additional requirements not at issue in this appeal. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04©).

ALJ's written decision confirms that he applied the correct legal standard at this step; *i.e.*, he identified Listing 12.04 as a possible fit based on plaintiff's mental impairments and proceeded to evaluate in detail the paragraph B criteria. R. at 19-20.

Plaintiff does not argue otherwise. Instead, she contends the ALJ failed to identify substantial evidence in support of the conclusions he reached about the extent of plaintiff's limitations. Pl.'s Mem. at 23-26. In support of this claim, plaintiff's brief recites medical evidence in the record tending to show that she suffered from more severe limitations in three functional areas. *Id*.

Plaintiff has marshaled evidence from the record in support of her position on this issue. Pl.'s Mem. at 23-26. But so has the Commissioner. Def.'s Mem. at 7-11. "The substantial evidence standard means that once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (citation and internal quotation marks omitted). In other words, a claimant must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Z.J.F. ex rel. Conkling v. Comm'r of Soc. Sec.*, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (Carter, M.J.).

Plaintiff has failed to carry her burden in this regard. An independent review of the record demonstrates that plaintiff managed to recover from the physical trauma to her heart but struggled to deal with the emotional impact of the event. *See, e.g.*, R. at 635 (cardiology treatment note observing that plaintiff exhibited significant anxiety and "became frustrated when [staff] informed her that her heart was working well, and well enough to go back to work").

It is clear that some of the mental symptomatology she exhibited in the wake of this cardiac event arose from, or was in some measure exacerbated by, the physical damage to her brain caused by the anoxic event. *See, e.g.*, R. at 667 (cardiology treatment note observing that plaintiff's "emotional status has always been somewhat labile, likely due to her underlying bipolar disorder, as well as her anoxic injury from her cardiac arrest")[9]; *id*. at 790 (treatment note assessing "chronic general anxiety, cognitive issues and emotional lability related to [history] of anoxic encephalpathy [*sic*]").

However, it is inaccurate to state that the ALJ misunderstood this aspect of plaintiff's medical history or that there is insufficient evidence in the record from which the ALJ could properly conclude that plaintiff suffered from "moderate" (as opposed to the more significant "marked" limitations) in the areas of mental functioning identified by plaintiff. *See* Def.'s Mem. at 7-11. Accordingly, this argument is rejected.

### 2. Treating Sources & The RFC

Plaintiff contends the ALJ improperly weighed the medical source opinions of two of her treating sources and, as a result, failed to incorporate the correct mental limitations into his RFC finding. Pl.'s Mem. at 26-28.

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'" *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp.

---

[9] Plaintiff quoted this treatment note in her supporting brief, but omitted the provider's suggestion of bipolar disorder as a possible contributing cause of her ongoing lability. *Compare* R. at 667, *with* Pl.'s Mem. at 23.

3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Tammy Lynn B.*, 382 F. Supp. 3d at 192 (quoting *Adams v. Colvin*, 2016 WL 3566859, at *3 (N.D.N.Y. June 24, 2016)).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626 (S.D.N.Y. 2019) (citations omitted). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192-93 (citation omitted).

Plaintiff argues the ALJ improperly discounted certain medical opinions given by Gregory A. Kelly, M.D., her treating cardiologist, and Phyllis A. Broege, Ph.D, her treating neuropsychologist. Pl.'s Mem. at 26-27.

First, plaintiff challenges the ALJ's decision to assign "little weight" to Dr. Kelly's March 30, 2016 opinion regarding her the nature and extent of her mental limitations. *Id*. at 26 (referring to ALJ's citation of R. at 660-62).[10] Second, plaintiff challenges the ALJ's decision to assign "little weight" to two of Dr. Broege's opinions: a December 4, 2015 evaluation that

---

[10] Dr. Kelly signed this note on June 8, 2016, but it comes from a March 30, 2016 office visit.

concluded, *inter alia*, it would be "unsafe" for plaintiff to return to work as a commercial truck driver, R. at 845-49, and a December 12, 2017 opinion finding plaintiff "100% disabled," R. at 817-20.[11]

Broadly speaking, the Regulations divide evidence from a claimant's medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[12] The most important of these is the treating source category, which includes a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

The opinion of a treating source regarding the nature and severity of a claimant's impairments is entitled to *controlling* weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted). And when a

---

[11] Plaintiff purports to challenge the ALJ's weighing of a "2016" opinion by Dr. Broege, but then makes an argument as to the December 2015 *and* the December 2017 opinions discussed by the ALJ. *Compare* Pl.'s Mem. at 26 (referring to a "2016" opinion by Dr. Broege), *with id.* at 26 (referring to ALJ's citation to December 2017 opinion finding plaintiff "100% disabled"), *and id.* at 27 (referring directly to Dr. Broege's December 2015 opinion).

[12] On January 18, 2017, the Social Security Administration made revisions to the rules regarding the evaluation of medical evidence. Because plaintiff's claim was filed before March 27, 2017, the prior policies govern here. *See, e.g., Daniels ex. rel. D.M.G. v. Comm'r of Soc. Sec.*, 2018 WL 5019746, at *6 n.13 (S.D.N.Y. Sept. 30, 2018) (explaining the elimination of the treating physician rule and related changes); *Perez v. Comm'r of Soc. Sec.*, 2019 WL 359980, at *6-*7 nn. 6-8 (E.D.N.Y. Jan. 29, 2019) (explaining various changes effective to claims filed after March 27, 2017). Plaintiff acknowledges as much in her brief. Pl.'s Mem. at 22 n.10.

treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight. *Id*. In fact, a treating physician's opinion may also be properly discounted, or even entirely rejected, when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Id*. (citation omitted).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case. *Tammy Lynn B.*, 382 F. Supp. 3d at 193-94 (citation omitted).

Beyond this so-called "treating physician rule," the same six factors set forth above apply with equal force to the evaluation of the remaining categories of medical evidence recognized by the Regulations: the "acceptable" and "other" sources mentioned earlier. *Tammy Lynn* B., 382 F. Supp. 3d at 194 (citation omitted). The former, those deemed "acceptable" sources, include "licensed physicians (medical or osteopathic doctors, psychologists, optometrists, podiatrists, and speech-language pathologists." *Id*. The latter category, deemed "other" in Administration parlance, are "ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists." *Id*.

Importantly, only evidence from a "treating" or "acceptable" source can be relied upon to establish the *existence* of a medically determinable impairment. *Tammy Lynn B.*, 382 F. Supp. 3d at 194 (citation omitted). However, evidence from all three sources "can be considered when determining severity of impairments and how they affect individuals' ability to function." *Id*.

Finally, while the six-factor analysis set forth above applies in all cases except where "controlling" weight is given to a treating physician's opinion, an ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (noting that an ALJ need not expressly recite each factor so long as it is "clear from the record as a whole that the ALJ properly considered" them).

Measured against the deferential standard owed to the Commissioner at this stage of the proceedings, plaintiff's arguments again fail. This is clear from a closer review of the challenged opinions. After a March 30, 2016 office visit, Dr. Kelly opined in relevant part that he was

> not really convinced that she is able to go back to work because of her mental status, but again, this is an underlying question. She does have memory issues which have been limiting her in the past. She also is quite emotionally labile as well which is a concern. I would like to get those tests and have her return for followup and make further recommendations based on those findings. I think there are many hurdles that will have to be overcome before she is able to return to work at this point in my opinion.

R. at 661-62.

The ALJ assigned "little weight" to the component of Dr. Kelly's that purported to opine about plaintiff's mental functioning, reasoning that Dr. Kelly gave "no definite limitations, [ ] is

- 16 -

not a mental health specialist, and [the opinion] is not a functional analysis." R. at 25.[13]

Dr. Broege, for her part, conducted two neurological evaluations of plaintiff, first in December of 2015 and again in December of 2017. In 2015, Dr. Broege opined that plaintiff suffered from "mild cognitive impairment" and that "it would not be safe for [claimant] to return to work as a commercial truck driver." R. at 848.

The ALJ assigned "little weight" to this 2015 opinion, reasoning that Dr. Broege had failed to "consider whether the claimant could perform other professions, such as ones that would only involve performing simple tasks in a low stress environment." R. at 25.

In 2017, Dr. Broege opined that while plaintiff had improved in some areas of mental functioning, other areas remained "impaired and unchanged over the past 2 years." R. at 819. In Dr. Broege's view, "[g]iven the amount of time past [*sic*] and cognitive remediation provided, cognitive status is not likely to change significantly going forward." *Id*. Accordingly, Dr. Broege reasoned that plaintiff "should be considered 100% disabled." *Id*.

The ALJ again assigned "little weight" to this 2017 opinion, reasoning that "it is not a functional analysis and it is unclear why [Dr. Broege] found the claimant totally disabled when the results of the examination showed at most moderately compromised functioning." R. at 25.

Repeating the approach she took at step three, plaintiff argues that the ALJ's decision to assign "little weight" to these opinions is improper because other evidence in the record tends to support the medical provider's conclusions. *Cf. Greene v. Astrue*, 2012 WL 1248977, at *3 (D. Mass. Apr. 12, 2012) ("[I]n what has become a too common practice,

---

[13] Once again, it bears noting that plaintiff has mischaracterized the ALJ's rationale on this issue by partially omitting his reasoning.

Plaintiff's counsel merely summarizes evidence in the record that she believes supports her client's argument that she is disabled."). Again, though, "the ALJ has both the ability and the responsibility to resolve conflicts in the evidence." *Doty v. Comm'r of Soc. Sec.*, 2017 WL 4621630, at *6 (N.D.N.Y. Oct. 13, 2017) (Suddaby, J.).

The Commissioner also correctly points out that plaintiff's argument seems to elide the difference between a medical opinion about the nature and extent of a claimant's limitations and a legal or factual opinion about whether or not a claimant is disabled within the meaning of the Regulations. The latter is an issue reserved to the Commissioner. *See, e.g.*, *Martino v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 118, 129 (W.D.N.Y. 2018).

In any event, the ALJ acted properly in his evaluation of these opinions. In the March 30, 2016 opinion and elsewhere, Dr. Kelly repeatedly emphasized that the nature and extent of plaintiff's mental impairments were unclear to him and should instead be evaluated by mental health specialists equipped to handle that task. *See, e.g.*, R. at 654 (recommending a neurological followup for "a more definitive assessment" at June 22, 2015 office visit); *id*. at 636 (opining plaintiff is likely disabled "because of her neuro/psych issues" but deferring that question to "psychiatry and neurology" at September 11, 2015 office visit).

Importantly, the ALJ did not, as plaintiff's brief misleadingly suggests, rely *solely* on Dr. Kelly's lack of specialty in mental health when making the determination about how much weight to assign his opinion. R. at 25. Instead, the ALJ gave several reasons why it was of limited value in determining the nature and extent of her mental limitations. *Id*. Certainly plaintiff does not believe that her own treating cardiologist failed to comprehend a distinction between "ordinary" mental impairments and the additional mental difficulties that might arise in the wake of a physical injury like brain anoxia.

The ALJ also properly evaluated Dr. Broege's opinions, which took an all-or-nothing approach to plaintiff's work capacity. In the December 2015 opinion, Dr. Broege opined that plaintiff could no longer safely work as a commercial truck driver. R. at 848. But as the ALJ noted, Dr. Broege did not consider whether other work might be possible, including simple work at a light exertional level in a low-stress environment. *Id*. at 25. In the absence of more specific guidance about how plaintiff's mental impairments might fit into an RFC formulation, there is little else the ALJ could be expected to do with this opinion.

The same is true of Dr. Broege's December 2017 opinion. As the Commissioner correctly notes, Dr. Broege's conclusion that plaintiff is "100% disabled" cannot be binding on the ALJ because that is "an opinion on the ultimate issue of disability." *Martino*, 339 F. Supp. 3d at 129. Further, the ALJ properly noted that Dr. Broege's opinion appears to be internally inconsistent; *i.e.* her conclusion of total disability is at odds with the findings on which it purports to be based. R. at 25 ("[I]t is unclear why [Dr. Broege] found the claimant totally disabled when the results of the examination showed at most moderately compromised functioning.").

In sum, there is nothing improper about an ALJ accounting for a medical source opinion's inconsistency, either within the opinion itself or when viewed in light of the longitudinal medical record as whole. *See, e.g.*, *Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019) (summary order) (approving of ALJ's decision to partially discount a treating provider's opinions because those opinions "were inconsistent with the moderate findings" reflected in the notes); *Wynn v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 40, 346 (W.D.N.Y. 2018) ("Inconsistency can constitute a good reason for rejecting a medical opinion."). Accordingly, these arguments are rejected.

Finally, because her arguments about the antecedent steps in the sequential disability analysis have failed, plaintiff cannot show any error in the ALJ's ultimate RFC determination. *See, e.g.*, *Tammy Lynn B.*, 382 F. Supp. 3d at 195 ("Plaintiff's disagreement with the ultimate factual determinations that the ALJ drew from this record evidence is not a basis for remand."). Accordingly, this argument is also rejected.

## V. **CONCLUSION**

The ALJ applied the appropriate legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1. Plaintiff's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: December 16, 2019
      Utica, New York.
                                    United States District Judge